Under the circumstances, the rule enforced in Becker v. Church, supra, must be applied, and the injunction continued, with $10 costs, to abide the event.

---

JEANS et al. v. BOLTON et al.

(Superior Court of New York City, General Term. July 3, 1893.)

EVIDENCE—WEIGHT.

In an action for work done by plaintiffs on defendant's house, it appeared that defendant had contracted with one S. to do certain work on the premises at an agreed price, and that S. subcontracted with plaintiffs. On completion of the contract, extra work was required to be done, and plaintiffs did it at S.'s request. S. testified that defendant requested him to employ carpenters to do the extra work, but defendant denied this, and testified that his contract was solely with S. At a certain time, S. told plaintiffs not to press their claim, as defendant was short, and about the same time collected all that was due him. *Held*, that a finding that plaintiffs were S.'s subcontractors in doing such extra work was proper.

Appeal from judgment on report of referee.

Action by Edward Jeans and another against Samuel Bolton and others to recover for materials furnished for and work done at certain premises in the city of New York. From a judgment in favor of defendants, plaintiffs appeal. Affirmed.

The opinion of the referee is as follows:

"This action is brought to recover for goods alleged to have been sold to, and work alleged to have been performed for, the defendants, at the premises S. W. corner Sixth avenue and 22d street, in the city of New York, by the plaintiffs, who are builders. The evidence before me discloses the fact that one Elisha Sniffin, an architect, contracted with the defendant Samuel Bolton to supply certain materials and perform certain work in and about the premises referred to, at an agreed price; that the said Sniffin furnished the materials and performed the work pursuant to said contract, and employed or contracted with the plaintiffs to do part of the same; and that plaintiffs were paid therefor by Sniffin's personal checks. Upon the completion of the contracts above referred to, it appears there was certain extra work required to be done, and Sniffin claims that Bolton requested him to employ carpenters to do this extra work. It appears that the plaintiffs entered upon the performance of this extra work at the request of Sniffin. The defendant Samuel Bolton emphatically denies the statements of Sniffin, and testifies that his contract was with Sniffin solely, and that he never knew or heard of the plaintiffs until their bill was presented, and that he paid this bill, or some part of it, at Sniffin's request. From the evidence I am not led to place any confidence in Mr. Sniffin's statement. From the testimony of Mr. Taylor it appears that in the fall of 1890 he told the plaintiffs not to press their claim, as Bolton was short; and the bill was not submitted until December, 1890. Sniffin had been careful, however, to collect his money in full in October, as appears by his receipt of October 8, 1890. He was evidently anxious to get his money, and, after receiving it, to leave the defendants to a lawsuit at the hands of his subcontractors, the plaintiffs. In view of this consideration, and the fact that the testimony of Sniffin has not been corroborated, and is flatly contradicted by Bolton, it cannot be said that the plaintiffs have maintained the issue by a preponderance of evidence; and this the plaintiffs must do, especially in view of the relations formerly existing between them and Sniffin and the defendants and Sniffin. I think the evidence clearly establishes that the plaintiffs were subcontractors of Sniffin. Having reached this conclusion, I have thought it unnecessary to pass upon the ques-

tions as to the reasonable value of the work done and materials furnished, and as to the liability of the defendant Mary Bolton, which latter question was raised by the defendants' counsel. The complaint should be dismissed, with costs."

Argued before FREEDMAN and GILDERSLEEVE, JJ.

John H. Hull, for appellants.
W. B. Ellison, for respondents.

PER CURIAM.   The judgment should be affirmed, with costs, upon the opinion of the referee.

------

### FORMAN v. FORMAN.

(Superior Court of New York City, Special Term.   June 25, 1893.)

MARRIAGE—ANNULMENT—INSANITY.
   In New York, in order to maintain an action to annul a marriage on the ground that defendant is a lunatic, it must appear that such cause existed at the time of the marriage.

Action by Anna Forman against Frank Willis Forman to annul the marriage contract existing between the parties.   Judgment for defendant.

Robert Goeller, for plaintiff.
William H. Clark, for defendant.

McADAM, J.   In order to maintain an action to annul a marriage on the ground that the defendant was a lunatic, it must appear that such cause existed at the time of the marriage.   Code, § 1743.[1]   The law proceeds upon the ground that the party was in fact incapable of making such a contract for want of the proper understanding necessary to yield an intelligent assent to the obligation.   The defendant seems to have had sufficient mental ability to comprehend the obligation and its function, for his wife cohabited with and had two children by him.   Misfortune overtook him, and he is now confined in an asylum for the insane.   The subsequent affliction furnishes no ground for divorce.   The parties took each other for better or worse, to care for each other in sickness as well as health, and must perform this vow until death discharge the obligation.   While the prospects of the wife are blighted by the misfortune, she must bear it with fortitude.   A suit to annul a marriage is to rescind it as if the contract had never been entered into, and the aggrieved party must elect to rescind within a reasonable time after the grievance has been discovered.   If, however, the party mentally sound continues to cohabit with the alleged lunatic, and has children by him, it proves

[1] Code Civil Proc. § 1743, provides that an action may be maintained to annul a marriage "for either of the following causes, existing at the time of the marriage: * * * (3) That one of the parties was an idiot or a lunatic."